**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **DAMIEN PATTERSON** | ) | |
| **Plaintiff,** | ) | |
| **v.** | ) | **Case No.: 22-cv-03183-RDB** |
| **DANIEL P. MARKMANN, M.D.,** *et al*. | ) | |
| **Defendants.** | ) | |

**PLAINTIFF'S OMNIBUS BRIEF IN SUPPORT OF MOTIONS IN LIMINE**

COMES NOW, Plaintiff Damien Patterson, by and through undersigned counsel, and moves this Honorable Court to exclude certain evidence described herein.

For ease of the Court and to avoid repetition, Plaintiff files a single brief.  His motions are as follows:

1. Motion pursuant to FRE 408 to exclude evidence/argument of prior settlement (p. 3)

2. Motion to exclude expert opinion that calf surgery is "exceedingly painful" (p. 6)

3. Motion to exclude cumulative expert testimony (p. 11)

4. Motion to prohibit evidence/argument that Mr. Patterson was "100% disabled" (p.14)

5. Motion to exclude improper evidence regarding marital relationship (p. 17)

**FACTS RELEVANT TO ALL MOTIONS**

On June 30, 2021 at Northwest Hospital, Dr. Daniel Markmann, a plastic surgeon, placed calf implants in both of Plaintiff Damien Patterson's legs.  Mr. Patterson remained an inpatient at Northwest Hospital until he was discharged on July 1, 2021.  Mr. Patterson alleges that while hospitalized, Defendants failed to recognize and diagnose bilateral compartment syndrome in both

of his legs.  As a result, Mr. Patterson has undergone 16 surgeries to save his legs, has incurred

millions of dollars in medical bills, and is left with virtually no muscle in his legs below his knees.

## <u>LAW APPLICABLE TO ALL MOTIONS</u>

A motion *in limine* seeks "to exclude anticipated prejudicial evidence before the evidence

is actually offered." *Changzhou Kaidi Elec. Co., Ltd v. Okin Am., Inc.,* 102 F.Supp.3d 740, 745

(D. Md. 2015) (quoting *Luce v. United States*, 469 U.S. 38, 40 n.2 (1984)).  Such motions are

"designed to narrow the evidentiary issues for trial and to eliminate unnecessary trial

interruptions." *Id*.  The decision to admit and exclude evidence is within the sound discretion of

the trial court and guided by the rules of evidence. *United States v. Querubin*, 150 Fed. Appx. 233,

235 (4th Cir. 2005).

## MOTION IN LIMINE NO. 1

## MOTION PURSUANT TO FRE 408 TO EXCLUDE ARGUMENT/EVIDENCE OF PRIOR SETTLEMENT

Plaintiff moves to prohibit Northwest Hospital from presenting evidence/argument that Plaintiff sued and settled with Dr. Markmann/Metamorphosis Plastic Surgery, LLC.

### FACTS SPECIFIC TO MOTION

Plaintiffs filed suit against two sets of Defendants: (1) Dr. Markmann and his professional corporation, Metamorphosis Plastic Surgery, LLC (via vicarious liability) (the "Released Defendants"); and (2) Northwest Hospital for its independent negligence and for the vicarious liability of its negligent physician assistants (the "Hospital Defendants"). Just prior to the filing of these motions *in limine*, Plaintiff settled with the Released Defendants.

The settlement agreement was made consistent with the Maryland Joint Tortfeasor Act. Md. Cts. & Jud. Proc. § 3-1404. Thus, if there is a jury verdict against the Hospital Defendants, the verdict amount will be reduced by the amount paid by the Released Defendants or the *pro rata* liability share, whichever is greater.

### LAW SPECIFIC TO MOTION

Federal Rule of Evidence 408 expressly prohibits evidence of settlement "to prove or disprove the validity or amount of a disputed claim . . . ."

### ARGUMENT

Plaintiff anticipates that Northwest Hospital may attempt to introduce evidence or argue that Plaintiff sued and settled with the Released Defendants. But Plaintiff's settlement with the Released Defendants cannot be offered at trial to prove the validity, invalidity, or extent of Northwest Hospital's liability. Fed. R. Evid. 408.

This is expressly prohibited by Federal Rule of Evidence 408 and, indeed, would violate the very reason for the Rule.  The fact that the Released Defendants settled with Plaintiff makes it no more or less likely that the Hospital Defendants were negligent.  The jury must determine whether the Hospital Defendants were negligent and caused injury based solely on the expert witnesses and other evidence presented at trial.  It would be improper for the jury to consider the settlement with the Released Defendants in determining whether Northwest Hospital was negligent and whether such negligence was a proximate cause of Mr. Patterson's injuries.

"Rule 408 bars the admission of a settlement agreement to prove the validity or invalidity of a claim or its amount.  (citations omitted).  This prohibition applies equally to settlement agreements . . .between a plaintiff and a third party."  This is so because '[t]he admission of such evidence would discourage settlements. . . ."  *Portugues-Santana v. Rekomdiv Int'l*, 657 F.3d 56, 63 (1st Cir. 2011) (citations omitted) (emphasis added).  Under Rule 408, "a defendant cannot prove the invalidity or amount of a plaintiff's claim by proof of plaintiff's settlement with a third person . . . ."  *McHann v. Firestone Tire & Rubber Co.*, 713 F.2d 161, 166 (5th Cir. 1983) (Citation omitted) (emphasis added).  The Fourth Circuit Court of Appeals has reversed verdicts where evidence of settlements agreements was improperly allowed.  *See Macsherry v. Sparrows Point, LLC,* 973 F.3d 212, 222 (4th Cir. 2020) (reversing trial court that improperly allowed settlement agreement evidence and finding error was not harmless.).

The purpose of Rule 408 is to encourage settlements.  "[W]e agree with the statement of the Fifth Circuit . . . that the 'spectre of a subsequent use to prejudice a separate and discrete claim is a disincentive which Rule 408 seeks to prevent.'"  *Fiberglass Insulators, Inc. v. Dupuy*, 856 F.2d 652, 654 (4th Cir. 1988).  If settlement agreements with co-defendants could be used as a sword by non-released defendants, then the Rule would be thwarted.  Certainly, Plaintiff would

not have entered into a release with the Released Defendants if that decision would put them at a litigation disadvantage against the remaining Defendants. *See id.* at 655 (noting the purpose of Rule 408's prohibition on evidence of third-party settlements is to promote "public policy favoring the compromise and settlement of disputes").

As a rule of exclusion, the Court does not engage in a probative vs. prejudice analysis when excluding evidence of settlement. Plaintiff notes, however, that the Hospital Defendants suffer no prejudice by applying the Rule. Maryland's Joint Tortfeasor statute provides the Hospital Defendants with a credit on the verdict to account for the settlement with the Released Defendants. Md. Cts. & Jud. Proc. § 3-1404. Thus, there is no risk that Plaintiff will be overcompensated by a full and fair verdict. In comparison, the risk of unfair prejudice to Plaintiff is great. First, failing to apply Rule 408 would discourage future litigants from settling. Second, admission of the settlement agreement/argument at trial would invite the jury to improperly reduce the verdict on the assumption that Plaintiff has already been paid for his injuries. It could also allow the jury to decide that the Released Defendants must have been negligent to the exclusion of the Northwest Defendants. Either consideration by the jury would be an improper one.

WHEREFORE, for the foregoing reasons, Plaintiff moves this Honorable Court to exclude evidence/argument that Plaintiff sued and settled with the Released Defendants.

## MOTION IN LIMINE NO. 2

### MOTION TO EXCLUDE DEFENSE EXPERT TESTIMONY
### THAT CALF IMPLANT SURGERY IS "EXCEEDINGLY PAINFUL"

Plaintiff moves to prohibit Defense experts from testifying that calf implant surgery is an "exceedingly painful" surgery.  Because the basis for such testimony is unverifiable hearsay of unidentified patients, it is not admissible.

### FACTS SPECIFIC TO MOTION

After surgery, Northwest placed Mr. Patterson on the surgical recovery floor where he remained for 19 hours until discharge.  It is during this 19-hour period that Plaintiff alleges the Defendants failed to recognize and diagnose his compartment syndrome.  All the experts agree that pain out of proportion to the trauma is a primary sign of compartment syndrome, here the surgery.   Throughout his 19-hour hospitalization, with few exceptions, Northwest nurses continuously documented Mr. Patterson's leg pain as 10 out of 10.  Under the universal pain scale utilized by Northwest Hospital, a pain rating of 10 is defined as the worst pain a person has experienced in his life.  Damien Patterson, an Air Force Veteran who served two combat tours in Iraq, understands pain.

In an effort to muddy this bad fact, Northwest Hospital has designated several experts to testify that calf implant surgery is an "exceedingly painful surgery."  For this claim, those experts rely on no literature, no textbook, no medical record.  The sole basis is allegedly reports of other unnamed patients who underwent calf surgery, classic hearsay.

### LAW SPECIFIC TO MOTION

On a motion to exclude expert testimony, Defendants bear the burden of proving that the opinions of their experts are admissible. *Cooper v. Smith & Nephew, Inc.*, 259 F.3d 194, 199 (4th Cir. 2001) ("The proponent of the testimony must establish its admissibility by a preponderance

of proof."). The proponent of the testimony bears the burden of proving the reliability of the opinions by a preponderance of the evidence. *See Daubert v. Merrell Dow Pharm., Inc.,* 509 U.S. 579, 592 n.10 (1993) (citing *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987)); *Cooper,* 259 F.3d 1 at 199.

Federal Rule of Evidence 702 governs the admissibility of expert testimony. Rule 702 says, "[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise." Rule 702, thus, permits expert testimony if that testimony is (1) helpful to the jury in understanding the evidence or determining a fact at issue, (2) "based on sufficient facts or data," (3) "the product of reliable principles and methods," and (4) the product of a "reliabl[e] appli[cation] of th[ose] principles and methods to the facts of the case." Fed. R. Evid. 702 (Emphasis added).

Implicit in the text of Rule 702 is a district court's gatekeeping responsibility to "ensur[e] that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Nease v. Ford Motor Co.*, 848 F.3d 219, 229 (4th Cir. 2017) (quoting *Daubert,* 509 U.S. at 597). In *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148-49 (1999), the Supreme Court held that the "gatekeeping" standard and "general principles" of *Daubert* applied to all expert testimony governed by Federal Rule of Evidence 702, meaning "scientific," "technical," and "other specialized" testimony. *Rochkind v. Stevenson*, 471 Md. 1, 42 (2020). The mechanism by which courts perform this gatekeeping function is found in Fed. R. Evid. 104(a), which requires courts to decide "any preliminary question about whether a witness is qualified, a privilege exists, or evidence is admissible."

If the expert's opinion is based solely or primarily on experience, then the witness must explain how that experience leads to the conclusion reached, why that experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts at issue. Fed. R. Evid. 702 Advisory Committee's Note (2000 Amend.). The trial court's gatekeeping function requires more than simply "taking the expert's word for it." *Id.* (quoting *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 43 F.3d 1311, 1319 (9th Cir. 1995) ("We've been presented with only the experts' qualifications, their conclusions and their assurances of reliability. Under *Daubert*, that's not enough."). The more subjective the expert's inquiry, the more likely the testimony should be excluded. *Id.* (citing *O'Conner v. Commonwealth Edison Co.*, 13 F.3d 1090 (7th Cir. 1994) (expert testimony based on a completely subjective methodology held properly excluded); *see also Kumho Tire Co,* 526 U.S. at 148-49.

With respect to reliability, the district court must ensure that the proffered expert opinion is "based on scientific, technical, or other specialized knowledge and not on belief or speculation, and inferences must be derived using scientific or other valid methods." *Nease*, 848 F.3d at 229 (quoting *Oglesby v. Gen. Motors Corp.*, 190 F.3d 244, 250 (4th Cir. 1999)). Reliability focuses on "the principles and methodology" employed by the expert. *Daubert*, 509 U.S. at 594-95. Specifically, district courts must ensure that an expert's opinion is "based on scientific, technical, or other specialized knowledge and not on belief or speculation." *Oglesby*, 190 F.3d at 250.

Daubert provides four, non-exhaustive "guideposts" to aid in the required reliability analysis: (1) whether the expert's theory or technique "can be (and has been) tested"; (2) "whether the theory or technique has been subjected to peer review and publication"; (3) "the known or potential rate of error" inherent in the expert's theory or technique; and (4) whether the expert's

methodology is generally accepted in his field of expertise. *Nease*, 848 F.3d at 229 (quoting *Daubert*, 509 U.S. at 593-94).

## **ARGUMENT**

All of the retained experts in this case agree that pain out of proportion to a traumatic event can be a sign of compartment syndrome. According to the medical records, Mr. Patterson's pain remained 10/10 for virtually his entire 19-hour hospitalization despite frequent and increasingly higher narcotic medication. In an attempt to combat the claim that his pain was out of proportion to the surgery, several of Defendants' experts seek to opine that calf implant surgery is "an exceedingly painful surgery." *See e.g.*, Ex. 1, Dr. Britt Report, at 4. However, none of the Defendants' experts have identified a single document, such as medical literature, a medical textbook, or a pre-surgery medical record to support that claim. None of the experts have undergone calf implants. Rather, the experts are relying entirely on supposed comments from unidentified prior patients who have undergone calf implant surgery. This is hearsay in its purest sense.

Because the patients are unnamed, and their specific situation unknown, Plaintiff has no way of verifying the veracity of such statements. The defense experts could have made this up out of whole cloth to support their opinions in this case, and there is no way to test it.

Expert testimony must be based on reliable methods and data. *Daubert*, 509 U.S. at 594-95. Here, Defendants' experts rely purely on anecdotal complaints from unidentified patients about a subjective condition (pain) who purportedly underwent similar surgeries. These complaints are unverifiable, subjective, and not supported by documented medical records or medical literature. Courts have long recognized that opinions based on unverifiable, anecdotal reports are inadmissible. *Oglesby*, 190 F.3d at 250.

Defendants' expert opinions regarding painfulness of calf-implant surgery are unreliable and not subject to peer review. The "methodology" employed by Defendants' experts—alleged patient reports—fails all *Daubert* reliability factors and amounts to little more than *ipse dixit*. The opinions have not been peer-reviewed, are not subject to testing, and lack a known rate of error. *Nease*, 848 F.3d at 229 (quoting *Daubert*, 509 U.S. at 593-94). Further, expert opinions that rely on unverified data are inadmissible. *MCI Communs. Servs. v. Am. Infrastructure-MD, Inc.*, 2013 WL 4086401, *10 (D. Md. Aug. 12, 2013) (excluding expert opinion not supported by record evidence); *Oglesby v. GMC*, 190 F.3d 244, 250 (4th Cir. 1999) ("Reliability of specialized knowledge and methods for applying it to various circumstances may be indicated by testing, peer review, evaluation of rates of error, and general acceptability.").

Plaintiff further notes that this testimony is irrelevant. Mr. Patterson alleges that two physician assistants, Gibbons and Stromberg, failed to diagnose his compartment syndrome by, *inter alia,* failing to recognize that he was experiencing pain out of proportion to the surgery. Both P.A. Gibbons and P.A. Stromberg have testified that prior to Mr. Patterson, they had never cared for a calf implant patient. Therefore, they would have had no idea what amount of pain the "typical" calf-implant patient experienced. As such, the "typical" pain level of a post-calf-implant patient is not relevant evidence.

WHEREFORE, for the foregoing reasons, Plaintiff moves this Honorable Court to exclude opinion evidence regarding the "typical" level of pain experienced from calf implant surgery.

## MOTION IN LIMINE NO. 3

### MOTION TO EXCLUDE CUMULATIVE EXPERT TESTIMONY

Plaintiff moves this Honorable Court to exclude cumulative expert testimony from the Defendants at trial.

### FACTS SPECIFIC TO THIS MOTION

In total, Northwest hospital has designated ten experts. Northwest individually designated three experts: Dr. Timothy Fee (plastic surgeon), Beitris McKeon, PA-C (physician assistant), and Richard Cassa, PA-C (physician assistant). Northwest also cross-designated an additional seven experts identified by the co-defendants: Dr. Timothy Bhattacharyya (surgeon), Dr. Frederick Jones (anesthesiologist), Dr. L.D. Britt (surgeon), Dr. Terrence Sheehan (physical medicine), Robin Karns, L.C.P. (life care planner), Ruth Fast, M.Ed (vocational rehabilitation counselor), and Thomas Grogan, CFE (economist). Five of these experts have been designated to express opinions which substantially overlap, with one another. Indeed, several of these witnesses' experts reports are virtually word-for-word identical with each other. Because such testimony would be unnecessarily duplicative and cumulative, would waste precious time, and would unfairly prejudice Plaintiff, he requests that the Court limit Northwest Hospital to one expert in each specialty.

### ARGUMENT

*(a) Standard of Care: Opinions that PAs Gibbons and Stromberg Met the Standard of Care*

Plaintiff has alleged that Physician Assistants Megan Gibbons and Scott Stromberg breached the standard of care applicable to Physician Assistants by failing to recognize and diagnose Mr. Patterson's compartment syndrome. Plaintiff has identified one Physician Assistant and one surgeon on this issue.

In response, in addition to identifying a Physician Assistant and a surgeon, Northwest Hospital has designated a plastic surgeon, Dr. Fee, to testify that PA Gibbons and PA Stromberg met the standard of care. *See* Ex. 2, Dr. Fee Report; Ex. 3, Dr. Bhattacharyya Report; Ex. 4, PA McKeon Report. Each witness is designated to express identical opinions on the standard of care during Mr. Patterson's post-operative management.

Because these three opinions from three different specialties all address the standard of care that applies to Physician Assistants, there is little probative value in allowing a third expert (plastic surgeon Dr. Fee) to restate the same opinion. Meanwhile, the danger of unfair prejudice to the Plaintiff is high. Allowing three witnesses from three different specialties would allow a jury to conclude that because Defendants have more experts to opine on these topics, they must be correct. Because these opinions are duplicative and needlessly cumulative, there is substantial danger of prejudice to Plaintiff. The Court should exercise its discretion and limit this testimony.

### (b) Causation: Opinions that Plaintiff did not have compartment syndrome while at Northwest Hospital

Northwest Hospital has designated Dr. Fee (plastic surgeon), Dr. Bhattacharyya (surgeon), Dr. Britt (surgeon), and PA McKeon (physician assistant), all to opine that Mr. Patterson's compartment syndrome developed after discharge from Northwest Hospital. *See* Ex. 1, Dr. Britt Report; Ex. 2, Dr. Fee Report; Ex. 3, Dr. Bhattacharyya Report; Ex. 4, PA McKeon Report; Ex. 5, Dr. Jones Report. Pursuant to their nearly identical reports, each witness intends to express identical causation opinions on the progression and timeline of Plaintiff's compartment syndrome. Because these opinions are identical, there is little probative value in allowing the opinion to be restated four times. Conversely, there is great likelihood of unfair prejudice to Plaintiff because, as with standard of care, this will allow the jury to conclude that more witnesses means more likely

correct.  Simply because the hospital has more resources to identify more experts, it should not be allowed to gain a tactical advantage.

Because these opinions are duplicative and needlessly cumulative, there is substantial danger of prejudice to Plaintiff. The Court should exercise its discretion and limit Northwest Hospital to the same number of causation witnesses as Plaintiff.

WHEREFORE, Plaintiff, Damien Patterson, respectfully requests that this Honorable Court grant his Motion *In Limine* to Exclude Cumulative Expert Testimony, limit the expert testimony Northwest Hospital may present at trial, and for any such other relief as the Court may find necessary and appropriate.

**MOTION IN LIMINE NO. 4**

**MOTION TO EXCLUDE EVIDENCE/ARGUMENT THAT MR. PATTERSON WAS "100% DISABLED" DUE TO HIS COMBAT SERVICE**

Plaintiff moves this Honorable Court to exclude evidence/argument of the disability rating assigned him by the Department of Veterans Affairs in connection with his military service.

**RELEVANT FACTS SPECIFIC TO THIS MOTION**

Mr. Patterson, 42, is a former Tactical Airborne Operator in the United States Air Force. He served two combat tours in Iraq where he was injured and ultimately honorably discharged in 2016.

When Mr. Patterson was injured during his military service, he became eligible for various service-connected benefits through the United States Department of Veterans Affairs. Under Federal law, service members who suffer illness or injury linked to military service are assigned a percentage "disability rating," which entitles them to financial benefits. However, this rating is not equivalent to a general impairment rating – like that which is commonly seen in worker's compensation matters. Instead, the VA's disability rating for a service member is primarily assigned and used to determine the compensation rate the member is entitled to.[1] In other words, a VA disability rating does not necessarily dictate a service member's general impairment level.

---

[1] https://www.benefits.va.gov/compensation/rates-index.asp#howcalc

14

Based on combat injuries and illnesses, the VA assigned a 100% disability rating after his discharge from the Air Force.

Northwest Hospital has not designated an expert to testify that Mr. Patterson was

```
Service Connection/Rated Disabilities
SC Percent:           100%
Rated Disabilities:   ANXIETY DISORDER  (70%)
                      HIATAL HERNIA  (60%)
                      LUMBOSACRAL OR CERVICAL STRAIN  (40%)
                      SLEEP APNEA SYNDROMES  (30%)
                      SUPERFICIAL SCARS  (30%)
                      SHOULDER MUSCLE INJURY  (20%)
                      LIMITED MOTION OF ARM  (20%)
                      LIMITED MOTION OF ARM  (20%)
                      PARALYSIS OF SCIATIC NERVE  (20%)
                      PARALYSIS OF SCIATIC NERVE  (20%)
                      PARALYSIS OF ANTERIOR CRURAL NERVE  (20%)
                      PARALYSIS OF ANTERIOR CRURAL NERVE  (20%)
                      ALLERGIC OR VASOMOTOR RHINITIS  (10%)
                      LIMITED EXTENSION OF THIGH  (10%)
                      LIMITATION ON MOTION, RING OR LITTLE FINGER  (0%)
                      2ND DEGREE BURNS  (0%)
                      ACNE  (0%)
                      3RD DEGREE BURNS  (0%)
```

functionally disabled prior to his compartment syndrome or to explain the meaning of the VA Disability rating.

## **ARGUMENT**

While Northwest Hospital and its witnesses are free to discuss Mr. Patterson's prior injuries (subject to relevance objections), it would be improper to tell the jury that Mr. Patterson was "100% disabled" prior to the alleged negligence. The bald assertion of a 100% disability rating carries substantial and overwhelming danger of unfairly prejudicing, confusing, or misleading the jury at trial. Without understanding how VA disability ratings are assigned and what they mean, the jury could improperly conclude that Mr. Patterson was completely disabled prior to the injuries he suffered in this case. No expert has opined, or been designated to testify, that Mr. Patterson was disabled prior to the negligence.

Moreover, because the rating will not be placed in context, there is a very real concern that a juror will hold the disability rating against Mr. Patterson. A juror could conclude that someone who is "100% disabled" should be largely unable to physically function. And when the jury learns that Mr. Patterson was physically fit and very physically active prior to the negligence, they might think that Mr. Patterson was, in some way, taking advantage of the disability system. Put another way, there is a real danger that without context and expert witness opinion, a lay jury simply will not appreciate how a VA disability rating is determined and what it means. It would be an unfair and improper conclusion to draw given that the VA Rating system is used for a different purpose.

Plaintiff is not seeking to prohibit Defendants' experts from mentioning the injuries identified in the VA Disability rating, assuming they are relevant. Plaintiff is seeking to prohibit evidence or argument that Mr. Patterson was "100% disabled" prior to the negligence. Since Defendants will still be free to address the individual prior conditions (if relevant), there is not unfair prejudice to them in prohibiting them from mentioning that Mr. Patterson was "100% disabled."

WHEREFORE, Plaintiff, Damien Patterson, respectfully requests that this Honorable Court grant his Motion *In Limine* to Exclude Evidence of Mr. Patterson's Veteran Disability Rating, exclude evidence of Plaintiff's 100% VA disability rating at trial, and for any such other relief as the Court may find necessary and appropriate.

## MOTION IN LIMINE NO. 5

## PLAINTIFF'S MOTION *IN LIMINE* TO EXCLUDE IMPROPER EVIDENCE RELATING TO OR CONCERNING MR. PATTERSON'S MARITAL RELATIONSHIP

Plaintiff moves this Honorable Court to exclude improper evidence related to or concerning Mr. Patterson's marital relationship as he is not making a loss of consortium claim.

## FACTS SPECIFIC TO MOTION

Damien Patterson married his wife, Courtney Chung, in December 2019. They first met in 2011, moved in together in early 2012, and had a son together shortly thereafter.

Mr. and Mrs. Patterson have not asserted a claim for loss of consortium. Mr. Patterson is not seeking damages for injury to his marital relationship. As a result, any evidence relating to or concerning his marital relationship, which could be embarrassing and misconstrued, is not relevant to any issue to be presented at trial.

## ARGUMENT

As part of discovery, Mr. Patterson was required to produce thousands of pages of medical records dating back many years. This included military mental-health records in which Mr. Patterson discussed intimate, private, and embarrassing issues related to his marriage. The use of, or reference to, such records at trial would only serve to embarrass Mr. and Mrs. Patterson. Likewise, they could be used to unfairly prejudice the jury against Mr. Patterson on an irrelevant and collateral issue.

This is a medical malpractice case where Mr. Patterson alleges that the Defendants failed to recognize and diagnose compartment syndrome in his legs, leaving him permanently injured. The case has nothing to do with Mr. Patterson's intimate marriage details. Such evidence has no bearing on whether the Defendants met the standard of care or caused his injuries. And because

Mr. Patterson is not seeking damages for injury to the marital relationship, it has no relevance to his damages.

Even if the Defendants were to convince the Court that such evidence could have minimal relevance, any probative value would be substantially outweighed by the risk of unfair prejudice to Mr. Patterson. *See* Fed. R. Evid. 403. This evidence deals with the most intimate aspects of a relationship between husband and wife. It comes from military mental health records in which Mr. Patterson had an expectation of privacy. To allow such information to be used in a medical malpractice trial with no claim of injury to the marital relationship would chill the expectation of privacy and the very foundation on which the mental health system is based. Meanwhile, the real purpose of such evidence would be to cause undue and unnecessary embarrassment, shame, or ire by allowing the jury to judge Mr. Patterson's moral choices. This, in turn, could cause the jury to decide the case not on the facts but rather on moral judgments. Because this danger is so great relative to the meager probative value such evidence could possibly hold, Rule 403 mandates exclusion.

WHEREFORE, Plaintiff, Damien Patterson, respectfully requests that this Honorable Court grant his Motion *In Limine* to Exclude Evidence Relating to or Concerning Mr. Patterson's Marital Relationship, exclude any evidence concerning Plaintiff's marriage, sexual activities, or injury thereto, and for any such other relief as the Court may find necessary and appropriate.

Respectfully submitted,


/s/ Scott M. Perry
Scott M. Perry, Esq. (#14763)
Nicholas J.N. Stamatis, Esq. (#22005)
BREIT BINIAZAN, P.C.
1010 N. Glebe Road, Suite 310
Arlington, VA  22201
Phone | 703.291.6666
Fax | 703.563.6692
Email | scott@bbtrial.com
Email | nick@bbtrial.com

*Counsel for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on this 28th day of February 2025, a true and accurate copy of the

foregoing was filed via the Court's ECF system to:

Michael J. Baxter, Esq.
Michelle Kendus, Esq.
BAXTER, BAKER, SIDLE, CONN & JONES, P.A.
120 E. Baltimore Street, Suite 2100
Baltimore, MD 21202
*Counsel for Northwest Hospital Center, Inc.*


/s/ Scott M. Perry
Scott M. Perry