IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DAMIEN PATTERSON** | * | |
| *Plaintiff* | * | |
| v. | * | |
| | * | Case No. 22-cv-03183 RDB |
| **DANIEL P. MARKMANN, M.D., et al.** | * | |
| *Defendants* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

### DEFENDANT'S RESPONSE TO PLAINTIFF'S
### OMNIBUS BRIEF IN SUPPORT OF MOTIONS *IN LIMINE*

Defendant, Northwest Hospital Center, Inc. ("NWHC"), by its attorneys Michael J. Baxter, Michele R. Kendus, and Baxter, Baker, Sidle, Conn & Jones, P.A., hereby files this Response to Plaintiff's Omnibus Brief In Support Of Motions *In Limine*. Plaintiff listed five Motions *in Limine* within a single Omnibus Brief (ECF 108), and Defendant presents its reply to each as follows:

1.   NWHC does not oppose Plaintiff's Motion pursuant to FRE 408 to exclude evidence/argument of prior settlement. NWHC will not introduce evidence or argument of Plaintiff's prior settlement with Daniel Markmann, MD and Metamorphosis Plastic Surgery, LLC.

2.   NWHC opposes Plaintiffs' Motion to exclude expert opinion that calf surgery is "exceedingly painful" for the reasons and upon the legal argument set forth more fully herein at (p. 2).

3.   NWHC opposes Plaintiffs' Motion to exclude cumulative expert testimony for the reasons and upon the legal argument set forth more fully herein at (p. 6).

4.  NWHC opposes Plaintiffs' Motion to prohibit evidence/argument that Mr. Patterson was "100% disabled" for the reasons and upon the legal argument set forth more fully herein at (p. 8)

5.  For all of the reasons stated within Defendant's Motion *In Limine* To Preclude Testimony Or Other Evidence Of Loss Of Consortium (ECF No. 102), NWHC does not oppose Plaintiff's Motion to exclude improper evidence regarding marital relationship. NWHC does, however, oppose Plaintiff's apparent attempt to exclude the entirety of his military mental health records for the reasons and upon the legal argument set forth more fully herein at (p. 9).

### DEFENDANT'S ARGUMENT IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE DEFENSE EXPERT TESTIMONY THAT CALF IMPLANT SURGERY IS "EXCEEDINGLY PAINFUL"

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case. Fed. R. Evid. 702. *See Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 592, 125 L. Ed. 2d 469, 113 S. Ct. 2786 (1993). In applying Rule 702, the trial court is tasked to act as a "gatekeeper" to ensure that proffered expert testimony "rests on a reliable foundation and is relevant." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597, 113 S. Ct. 2786, 125 L. Ed. 2d 469 (1993).

"In making its initial determination of whether expert opinion is sufficiently reliable, the court has broad latitude to consider whatever factors bearing on validity that the court finds to be useful; the particular factors will depend upon the unique circumstances of the expert testimony

involved." *Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999) (citing *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 143 L. Ed. 2d 238, 119 S. Ct. 1167, 1175-76 (1999)). Further, expert testimony is subject to being tested by "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *Daubert*, 509 U.S. at 596. Only expert evidence that has a greater potential to mislead than to enlighten the jury should be excluded. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 261 (4th Cir. 1999).

Expert testimony need not be based upon scientific literature to be sufficiently reliable. *See Westberry v. Gislaved Gummi AB*, 178 F.3d 257, 264 (4th Cir. 1999) (finding an expert physician need not rely upon scientific literature to determine causation through differential diagnosis)). "[A]lthough experiential expert testimony does not rely on anything like a scientific method, such testimony is admissible ... so long as an experiential witness explains how his experience leads to the conclusion reached, why his experience is a sufficient basis for the opinion, and how his experience is reliably applied to the facts." *Morris v. Biomet, Inc.*, 491 F. Supp. 3d 87, 98 (D. Md. 2020)(citing *United States v. Bynum*, 604 F.3d 161, 167 (4th Cir. 2010)). In *Morris*, applying the *Daubert* standard, this Court rejected the plaintiff's argument that an experienced orthopedic surgeon lacked an adequate methodology to conclude that a surgical device defect caused the plaintiff's injury where the opinion was based solely upon the surgeon's general observations during numerous surgeries involving the device. *Morris v. Biomet, Inc*., 491 F. Supp. 3d 87, 99 (D. Md. 2020) (holding the surgeon's opinions "need not be excluded under Daubert," and could be challenged through plaintiff's case or on cross-examination at trial).

In this case, Defendant will offer the opinions of Daniel Markmann, MD, Timothy Fee, MD and Frederick Jones, MD regarding the anticipated level of pain following calf implant surgery. Each of these physicians is expected to testify, based on their experience in monitoring

and treating post-operative pain in patients, that significant post-operative pain is anticipated following calf-implant surgery. The experts will explain that patients subjectively report their pain experience through a standard pain scale rated 1 to 10, 1 being mild and 10 being the worst pain possible. Physicians who have experience evaluating and monitoring patients postoperatively are familiar with the anticipated level of pain based on their observations of prior patients, the typical scores reported on the pain scale, and the typical level of analgesic or other pain relief measures necessary to control the pain.

Dr. Markmann, who performed Plaintiff's calf implant surgery and ordered his postoperative pain medication, has performed at least two to three calf implant surgeries for year over the past 15 to 20 years. *See* Deposition of Daniel Markmann, MD, relevant portions attached as Exhibit 1 ("Markmann Dep.") at 31:18-22, 33:5-9. Based on this experience in monitoring and treating the post-operative pain in these patients, Dr. Markmann has observed that calf implants are "very painful" with post-operative pain assessed at "10 out of 10 even a day or two afterwards." Ex. 1, Markmann Dep. at 132:11-18. Dr. Markmann also explains the physiological basis of the postoperative pain "anything that's putting pressure on, stretching, irritating the muscle is very painful." Ex. 1, Markmann Dep. at Markmann Dep. 50:14-21.

Dr. Fee has performed calf implant surgery and observed that "calf implants are very painful." *See* Deposition of Timothy Fee, MD, relevant portions attached as Exhibit 2 ("Fee Dep.") at 47:1-3. Dr. Fee also explains the physiological basis for the pain:

> placing implants into somebody's calves is, by definition, . . . compartment syndrome because you are elevating the pressure in the compartment. . . But it may progress to where it's compartment syndrome emergency or it may regress to being compartment syndrome not an emergency and resolution and stretching and relaxation of the compartment as the pressure drops. Now, the patients that I do that on don't all need fasciotomies to relieve the pressure emergently. A lot of them act just like what Mr. Patterson did. They have pain, tingling, numbness. They don't

> move their ankles . . . primarily because it hurts, not because their muscles don't work. But that pressure can then push on nerves and do some things, but generally that gets better, not worse.

Ex. 2, Fee Dep. 24:7 – 25:10.

Dr. Jones is an anesthesiologist who was not deposed during discovery in this case. It is anticipated that Dr. Jones will explain that, based on his postoperative evaluation and treatment of patients following calf implant surgery, that it is a very painful experience. Dr. Jones explains that it is imperative to understand the anticipated postoperative pain based on prior patient monitoring and evaluation in order to choose the correct pain control measures. That is done through understanding the physiological basis for the pain as well as the typical pain experience reported by prior patients.

Further, Plaintiff's argument that a physician expert with experience treating patients in the postoperative period following calf implant surgery cannot reliably opine regarding the anticipated pain caused by the surgery is illogical. The same logic would preclude Plaintiff's experts from testifying that Mr. Patterson experienced "pain out of proportion to the surgery," which is one of the signs of compartment syndrome that Plaintiff's experts say the Defendant healthcare providers missed. A physician must have a baseline measure of the anticipated pain caused by the surgery in order to measure whether the reported postoperative pain is out of proportion. That baseline is determined through past experience monitoring the pain levels reported by patients, and the level of pain medication required to minimize that pain. Plaintiff's expert plastic surgeon, Frank Lau, MD, follows the same methodology, stating that he expects a patient to experience pain levels of "7 or 8 out of 10" following leg surgery, and that Mr. Patterson's report of pain at 10 out of 10 was out of proportion. *See* Deposition of Frank Lau, MD relevant portions attached as Exhibit 3, at 106:10-18; 107:2-5.

The experience evaluating and treating post-operative pain in many plaintiffs, in addition to the physiological explanation for the pain, provides a sufficient basis for the physician experts' opinions regarding anticipated pain following calf implant surgery. Dr. Markmann, Dr. Fee and Dr. Jones are unquestionably experienced in evaluating, monitoring and treating pain in patients who have undergone calf implant surgery. Thus, their opinions based on this experience and on their specialized knowledge of the physiological cause of the pain is reliable and directly relevant to Plaintiff's claim that he exhibited "pain out of proportion." The expert opinions regarding the pain experience following calf-implant surgery is, therefore, admissible and subject to "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof." *See Daubert*, 509 U.S. at 596.

### DEFENDANT'S ARGUMENT IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE CUMULATIVE EXPERT TESTIMONY

Plaintiff requests this Court exclude certain opinions offered by the defense experts on the premise that more than one expert offering the same opinion is duplicative and needlessly cumulative. Yet Plaintiff has in similar fashion designated several experts to offer the same opinions.

First, Plaintiff states that three experts, Beatrice McKeon, PA (a Physician Assistant), Timothy Bhattacharyya, MD (an Orthopedic Surgeon), and Timothy Fee, MD (a Plastic Surgeon) are offered by the defense to offer the opinions that the NWHC physician assistants, Megan Gibbons and Scott Stromberg, met the standard of care. In similar fashion, Plaintiff has designated and is expected to call two experts, Craig Baumgartner, DMSc, PA-C, MPAS (Physician Assistant), and Robert Hymes, MD (Orthopedic Surgeon) to testify that PA Gibbons and PA Stromberg breached the standard of care. Further, the testimony of a physician assistant describing the background, education, experience, and applicable standard of care for a similarly qualified

physician assistant is qualitatively different from the testimony of a physician describing the physician's expectations regarding a the PA's evaluation of the physician's patient and the communication to the physician regarding such evaluations. As such, the testimony is not unnecessarily cumulative and should be permitted. See *United States v. Galecki*, 932 F.3d 176, 186 (4th Cir. 2019) (holding that the district court erred in excluding witness testimony as cumulative where the testimony of one witness was qualitatively different from that of the other defense witnesses).

Plaintiff also seeks to exclude the opinions of four defense experts regarding when Plaintiff's compartment syndrome developed. One of the experts, Dr. Britt, will not be called to testify at trial. The remaining three, Dr. Fee, Dr. Bhattacharyya, and PA McKeon, will address when Plaintiff began to develop compartment syndrome in different ways. PA McKeon will address only the standard of care for the NWHC physician assistants. In that regard, she offers the opinions that the physician assistants appropriately evaluated Mr. Patterson, appropriately reported their findings to Dr. Markmann, and in consultation with Dr. Markmann appropriately ruled out compartment syndrome at the time of his discharge from the hospital. Dr. Fee provides testimony as a plastic surgeon to explain that Mr. Patterson's symptoms in the postoperative period at NWHC were consistent with the anticipated symptoms caused by the calf implants, and not indicative of compartment syndrome. Dr. Bhattacharrya will offer opinions that Mr. Patterson's symptoms during his admission at NWHC were not indicative of compartment syndrome, and he explains further that when Mr. Patterson presented to the Inova Fairfax Hospital on July 2, 2021, where he underwent surgery to remove the calf implants, the intraoperative findings indicate that the compartment syndrome began on July 2, 2021, after Mr. Patterson had been discharged from NWHC. Plaintiff similarly offers the opinions of PA Baumgartner that Mr. Patterson exhibited

signs and symptoms of compartment syndrome that the NWHC physician assistants failed to diagnose during his admission; the opinions of Dr. Hymes that based on the documented symptoms, Mr. Patterson developed compartment syndrome prior to his discharge from NWHC; and the opinions of Vineet Mehan, MD, a plastic surgeon who performed the surgeries at Inova Fairfax Hospital after the calf implants were removed who is expected to offer opinions that his intraoperative findings indicate the compartment syndrome began before Mr. Patterson was discharged from NWHC. As such, Plaintiff and Defendant are each proffering three experts of similar background to offer opinions regarding when Plaintiff's compartment syndrome developed. The testimony of each of these experts is qualitatively different, is not unnecessarily cumulative, and should be permitted. *See Id*.

### DEFENDANT'S ARGUMENT IN OPPOSITION TO PLAINTIFF'S MOTION TO EXCLUDE EVIDENCE/ARGUMENT THAT MR. PATTERSON WAS "100% DISABLED" DUE TO HIS COMBAT SERVICE

Plaintiff seeks to exclude evidence of his Veteran's Administration ("VA") disability rating on the grounds that it is not "equivalent to a general impairment rating – like that which is commonly seen in worker's compensation matters." Plaintiff goes on to represent that the rating is nothing more than a determination of "the compensation rate the member is entitled to," with a reference to the VA website https://www.benefits.va.gov/compensation/rates-index.asp#howcalc. (ECF 108 at p. 14, FN 1). The information provided on the VA website, which is attached as Exhibit 4, explains that "the amount of basic benefit paid ranges, depending on how disabled you are. VA makes a determination about the severity of your disability based on the evidence you submit as part of your claim, or that VA obtains from your military records." It further explains that a combined disability rating, which Mr. Patterson has been given, is not additive, but that "the disabilities are first arranged in the exact order of their severity, beginning with the greatest

8

disability . . .". As such, it is agreed that Defendant will not make bald assertions that Mr. Patterson is "100% disabled." However, the Service Connected Disabilities rating chart that is contained within Mr. Patterson's VA records demonstrates the multiple prior service related injuries suffered by Mr. Patterson, in the order of their severity in accordance with the disability rating given for each. That evidence is directly relevant to Plaintiff's damages claims in this case, and should not be excluded. Further, to the extent necessary, Plaintiff is knowledgeable regarding his disability rating such that his own testimony can explain his prior service connected disabilities to enable the jury to understand the significance, or lack thereof.

## DEFENDANT'S ARGUMENT IN RESPONSE TO PLAINTIFF'S MOTION TO EXCLUDE IMPROPER EVIDENCE RELATING TO OR CONCERNING MR. PATTERSON'S MARITAL RELATIONSHIP

For all of the reasons stated within Defendant's Motion *In Limine* To Preclude Testimony Or Other Evidence Of Loss Of Consortium (ECF No. 102), NWHC does not oppose, and has filed its own motion to exclude evidence of loss of consortium (ECF No. 102). Plaintiff's Motion to exclude improper evidence regarding marital relationship seems, however, to extend to a request to exclude Plaintiff's prior military mental-health records. These records contain significant information relevant to Plaintiffs' claims for past and future psychological injury and damages, including counseling, allegedly caused by his claimed physical injury in this case. Plaintiff's prior mental health records are directly relevant, and should not be excluded from evidence.

Respectfully Submitted,

*/s/ Michael J. Baxter*
Michael J. Baxter (Federal Bar No. 01209)
Michele R. Kendus (Federal Bar No. 26586)
mbaxter@bbsclaw.com
mkendus@bbsclaw.com
Baxter, Baker, Sidle, Conn & Jones, P.A.
120 E. Baltimore Street, Suite 2100
Baltimore, Maryland 21202
Telephone: (410) 230-3800
FAX: (410) 230-3801
***Attorneys for Defendant***
***Northwest Hospital Center, Inc.***

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that, on this **13th day of March, 2025,** the foregoing *Defendant's Response to Plaintiff's Omnibus Brief In Support Of Motions In Limine* and was filed electronically via CM/ECF and served electronically on:

Scott M. Perry, Esquire
Breit Biniazan, P.C.
1010 N. Glebe Road, Suite 310
Arlington, VA  22201
***Attorneys for Plaintiff***

*/s/ Michael J. Baxter*
Michael J. Baxter (Federal Bar No. 01209)