IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| DAMIEN PATTERSON, | * | |
| *Plaintiff*, | * | |
| v. | * | Civil Action No. RDB-22-3183 |
| NORTHWEST HOSPITAL CENTER, | * | |
| *Defendant.* | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## **MEMORANDUM OPINION**

This medical malpractice suit is brought by Plaintiff Damien Patterson ("Plaintiff" or "Patterson") against Defendant Northwest Hospital Center. ("Defendant" or "Northwest") relating to the provision of post-operative care by Northwest staff—namely, Scott Stromberg, P.A., ("Stromberg"); Megan Gibbons, P.A., ("Gibbons"); and Karla Ponton, P.A., ("Ponton")—following Patterson's June 30, 2021 calf-implant surgery.  (ECF No. 115.)[1]  The matter is set for a nine-day jury trial beginning April 21, 2025.  (ECF No. 99.)  Seven motions are presently pending in the above-captioned case, (ECF Nos. 85; 86; 102; 103; 105; 106; 108), though only two motions are fully briefed and ripe:[2] (1) Defendant's Motion for Summary

---

[1] For clarity, this Memorandum Opinion cites to the ECF generated page number, rather than the page number at the bottom of the parties' various submissions, unless otherwise indicated.  Likewise, this Memorandum Opinion cites to the ECF generated document number, rather than the exhibit number provided by the parties' various submissions.

[2] The remaining motions—all motions *in limine* filed February 28, 2025—are as follows: Defendant's Motion *in Limine* to Preclude Testimony of Loss of Consortium (ECF No. 102); Defendant's Motion *in Limine* to Preclude Plaintiff from Calling Ronald Mendoza to Testify Live at Trial (ECF No. 103); Defendant's Motion *in Limine* to Prohibit Plaintiff from Introducing into Evidence or Otherwise Displaying Certain Photographs (ECF No. 105); Defendant's Motion *in Limine* to Preclude Evidence or Argument that Karla Ponton, PA Was Negligent (ECF No. 106); and Plaintiff's Omnibus Motion in Limine (ECF No. 108), which moves (1) pursuant to Federal Rule of Evidence 408 to exclude evidence and/or argument of prior settlement (*id.* at 3–5); (2) to exclude defense expert testimony that calf implant surgery is "exceedingly painful" (*id.* at 6–10); (3) to exclude

Judgment (ECF No. 85); and (2) Defendant's Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center (ECF No. 86) (collectively, the "pending Dispositive Motions"). Accordingly, this instant Memorandum Opinion addresses only the pending Dispositive Motions.

Discovery in this matter concluded on August 2, 2024. (ECF No. 82.) On October 16, 2024, Defendant Northwest filed the two pending Dispositive Motions (ECF Nos. 85; 86.) When Northwest filed the pending Dispositive Motions, the Second Amended Complaint ("SAC") (ECF No. 76)—which was superseded by the Third Amended Complaint (ECF No. 115)—was the operative complaint. The two-count SAC was brought against Northwest, as well as the operating physician Dr. Daniel Markmann, M.D., ("Dr. Markmann") and Metamorphosis Plastic Surgery, LLC. (ECF No. 76.) In Count I of the SAC, Patterson asserted a medical malpractice claim against Dr. Markmann and Metamorphosis for individual and vicarious liability, and against Northwest for vicarious liability alleging that Dr. Markmann was its apparent agent. (*Id.* ¶¶ 53–57.) In Count II of the SAC, Patterson asserted a medical malpractice claim against Northwest alleging that the hospital is directly liable and vicariously liable for the alleged negligence of three physician assistants employed by Northwest—Megan Gibbons, P.A., ("Gibbons"); Scott Stromberg, P.A., ("Stromberg"); and Karla Ponton, P.A., ("Ponton") (collectively, the "Northwest PAs")—and of Dr. Markmann as Northwest's apparent agent regarding Patterson's post-operative care. (*Id.* ¶¶ 58–61.)

Through its Motion for Summary Judgment (ECF No. 85), Northwest raised three

---

cumulative expert testimony (*id.* at 11–13); to exclude evidence and/or argument that Plaintiff was "100% disabled" due to his combat service (*id.* at 14–16); and to exclude improper evidence relating to or concerning Mr. Patterson's Marital Relationship (*id.* at 17–18).

arguments. Northwest argued that summary judgment was appropriate because: (1) Dr. Markmann was not an ostensible or apparent agent of Northwest, (ECF No. 85-1 at 5–10) ("Northwest's First Argument for Summary Judgment"); (2) should Plaintiff's claim of apparent agency not be dismissed, Northwest's vicarious liability should be limited to Dr. Markmann's duties under the Alternate Supervising Physician Agreement, (*id.* at 10–11 (citing ECF No. 85-4)) ("Northwest's Second Argument for Summary Judgment"); and (3) that the alleged negligence of the Northwest PAs was not the proximate cause of Patterson's claimed injuries (*id.* at 12–14) ("Northwest's Third Argument for Summary Judgment"). Through its Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center (ECF No. 86), Northwest raised two arguments: (1) that Plaintiff had failed to specifically plead any claims of direct liability against Northwest, (ECF No. 86-1 at 7); and (2) that Plaintiff's claims for direct liability against Northwest must be dismissed because (A) the Statement of the Claim submitted to the Maryland Health Care Alternative Dispute Resolution Office ("MHCADRO") as a prerequisite to filing this suit pursuant to Maryland's Health Care Malpractice Claims Act ("MHCMCA"), MD. CODE. ANN., CTS. & JUD. PROC. §§ 3-2A-01–3-2A-10, did not assert any breaches of the standard of care by Northwest with regard to its general policies, procedures, staffing, and/or training, (ECF No. 86-1 at 8); and (B) Plaintiff did not file a Certificate and Report of Qualified Expert attesting that Northwest departed from the standard of care in this regard, or that such a departure was the proximate cause of Plaintiff's alleged injury, as required as a prerequisite to filing this lawsuit pursuant to MHCMCA, (*id.*).

After the pending Dispositive Motions were fully briefed, Plaintiff filed a stipulation of

dismissal of Dr. Markmann and Metamorphosis.  (ECF Nos. 100; 101.)  Thereafter, with the consent of Northwest, Plaintiff filed the one-count Third Amended Complaint ("TAC") (ECF No. 115).  In Count I of the TAC, Patterson asserts a medical malpractice claim against Northwest alleging that the hospital is directly and vicariously liable for the alleged negligence of the Northwest PAs regarding Patterson's post-operative care.  (*Id.* ¶¶ 45–48.)  In other words, the filing of the TAC mooted Northwest's First and Second Arguments for Summary Judgment, as Plaintiff no longer alleges that Dr. Markmann was Northwest's apparent agent, nor does Plaintiff continue to pursue a claim for vicarious liability for Dr. Markmann's against Northwest.[3]

The Court has reviewed the parties' submissions, and no hearing is necessary.  *See* Local Rule 105.6 (D. Md. 2023).  For the reasons that follow, Defendant's Motion for Summary Judgment (ECF No. 85); and Defendant's Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center (ECF No. 86) are both DENIED.

## BACKGROUND

### I.     The Parties

Plaintiff Damien Patterson is a citizen and resident of Virginia.  (ECF No. 115 ¶ 1.)  Defendant Northwest Hospital Center is a Maryland incorporated business providing medical services in Maryland.  (*Id.* ¶ 2.)

---

[3] On March 12, 2025, the Court held an off-the-record status conference with the parties, (ECF No. 116), wherein Defendant agreed that its First and Second Arguments for Summary Judgment were mooted by the TAC.

4

## II. Factual Background

The Court limits the foregoing to the factual information relevant to the live arguments presented in Defendant's Motion for Summary Judgment (ECF No. 85) and Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center (ECF No. 86).

On June 30, 2021, Patterson underwent calf-implant surgery. (ECF Nos. 85-13 at 2; 88-3 at 2.) The surgery was performed at Northwest Hospital in Randallstown, Maryland, by Dr. Markmann. (ECF No. 85-13 at 2.) Patterson "opted to stay [overnight] for fear of complications[,]" (ECF No. 88-2 at 13:21–22), thus following surgery, Plaintiff was moved to a recovery floor at Northwest, where he remained until being discharged on July 1, 2021. (ECF No. 88-7.)

During his time on the recovery floor at Northwest, physician assistants Gibbons and Stromberg cared for Patterson under Dr. Markmann's supervision. (ECF Nos. 88-5; 88-7; 88-8; 88-9; 88-12 at 14:21–15:1; 88-14 at 9:12–14.) Medical records from June 30 indicate that Gibbons observed that Patterson was complaining of pain and numbness in his toes and feet. (ECF No. 88-7 at 4–5.) They further indicate that Gibbons "[d]iscussed with Dr. [] Markmann." (*Id.* at 4; *see also* ECF No. 88-10.) Medical records from July 1 indicate that Stromberg observed the same and "[t]exted Dr. Markmann an update." (ECF No. 88-7 at 5.) During his deposition, Patterson testified that while he was in recovery, "[his] pain just kept increasing . . . despite the increased medication [providers] were giving [him]." (ECF No. 88-2 at 17:21–22.) He also replied "No" when asked "Did the pain from the time it started in the recovery area until you left the hospital ever do anything but increase?" (*Id.* at 18:1–4.) While

5

physician assistant Ponton did not provide direct patient care to Patterson, she prepared a discharge order that was contingent upon a satisfactory evaluation by Stromberg before Patterson left the hospital. (ECF No. 89-4 at 5.)

On July 2, 2021—the day after Patterson was discharged from Northwest—Patterson was admitted at Inova Fairfax Hospital where he was diagnosed with compartment syndrome, requiring numerous corrective surgeries. (ECF Nos. 88-13 at 15:7–17:21; 88-15.) The basic premise of Plaintiff's remaining medical malpractice claim against Northwest is that Gibbons, Stromberg, and Ponton's coordinated post-surgical care was negligent. (ECF No. 115 ¶¶ 45–48.) In brief, Patterson contends that the Northwest PAs failed to appropriately monitor his post-operative condition; failed to properly evaluate and consider potential causes of his post-operative pain, numbness, and other complaints; failed to perform a differential diagnosis; failed to suspect or consider compartment syndrome; failed to test for or rule out compartment syndrome; failed to diagnose and treat his bilateral compartment syndrome at a time when the condition could be remedied without permanent injury; and negligently discharging Patterson. (*Id.* ¶ 47.)

### III. Procedural History

In November 2022, Patterson filed a Statement of Claim with the Maryland Health Care Alternative Dispute Resolution Office, advancing claims against Northwest, as well as Dr. Markmann, Metamorphosis, and the Northwest PAs. (ECF No. 86-4.) Patterson also filed Certificates of Qualified Experts of Craig Baumgartner, PA-C, (ECF No. 86-5) and Dr. Frank Lau, M.D., (ECF No. 86-6). On November 15, 2022, MHCADRO issued an Order of Transfer pursuant to MD. CODE. ANN., CTS. & JUD. PROC. §§ 3-2A-06B. (ECF No. 86-7.)

Invoking this Court's diversity jurisdiction, Plaintiff commenced this medical malpractice action against Northwest, as well as Dr. Markmann, Metamorphosis, and the Northwest PAs on December 9, 2022. (ECF No. 1.) On January 9, 2023, Patterson filed an Amended Complaint, asserting claims against Northwest, Dr. Markmann, and Metamorphosis. (ECF No. 9.) And then, on February 16, 2024, this Court granted Plaintiff's Motion to Amend Complaint (ECF No. 52), (ECF No. 75), resulting in the filing of the Second Amended Complaint (ECF No. 76).

The two-count SAC was also brought against Northwest, Dr. Markmann, and Metamorphosis. (ECF No. 76.) In Count I of the SAC, Patterson asserted a medical malpractice claim against Dr. Markmann and Metamorphosis for individual and vicarious liability, and against Northwest for vicarious liability alleging that Dr. Markmann was its apparent agent. (*Id.* ¶¶ 53–57.) In Count II of the SAC, Patterson asserted a medical malpractice claim against Northwest alleging that the hospital is directly and vicariously liable for the alleged negligence of the Northwest PAs and of Dr. Markmann as Northwest's apparent agent regarding Patterson's post-operative care. (*Id.* ¶¶ 58–61.) Northwest filed an Answer to the SAC (ECF No. 77), as did Dr. Markmann and Metamorphosis (ECF No. 79.)

Discovery in this matter concluded on August 2, 2024. (ECF No. 82.) On October 16, 2024, Defendant Northwest filed its two pending Dispositive Motions (ECF Nos. 85; 86). As noted above, when Northwest filed the pending Dispositive Motions, the Second Amended Complaint ("SAC") (ECF No. 76) was the operative complaint.

As noted above, after the pending Dispositive Motions were fully briefed, Plaintiff filed a stipulation of dismissal of Dr. Markmann and Metamorphosis. (ECF Nos. 100; 101.)

Thereafter, Plaintiff filed the one-count TAC (ECF No. 115), which asserts a medical malpractice claim against Northwest alleging that the hospital is directly and vicariously liable for the alleged negligence of the Northwest PAs regarding Patterson's post-operative care. (*Id.* ¶¶ 45–48.) As a result—and as counsel for Northwest agrees—only Northwest's Third Argument for Summary Judgment remains live: that is, Northwest continues to contend that summary judgment is appropriate because the alleged negligence of the Northwest PAs was not the proximate cause of Patterson's claimed injuries. (ECF No. 85 at 12–14.) The remainder of this Memorandum Opinion addresses that argument, as well as the arguments advanced in Northwest's Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center (ECF No. 86).

## STANDARD OF REVIEW

### I.   Motion for Summary Judgment

Rule 56 of the Federal Rules of Civil Procedure provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A material fact is one that "might affect the outcome of the suit under the governing law." *Libertarian Party of Va. v. Judd*, 718 F.3d 308, 313 (4th Cir. 2013) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A genuine issue over a material fact exists "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248. When considering a motion for summary judgment, a judge's function is limited to determining whether sufficient evidence exists on a claimed factual dispute to warrant submission of the matter to a jury for resolution at trial. *Id.* at 249. In

8

undertaking this inquiry, this Court must consider the facts and all reasonable inferences in the light most favorable to the nonmoving party. *Libertarian Party of Va.*, 718 F.3d at 312; *see also Scott v. Harris,* 550 U.S. 372 (2007).

## II.     Motion for Judgment on the Pleadings

Rule 12(c) of the Federal Rules of Civil Procedure authorizes a party to move for judgment on the pleadings any time after the pleadings are closed, as long as it is early enough not to delay trial. *See* Fed. R. Civ. P. 12(c). The legal standard governing such a motion is the same as a motion to dismiss under Rule 12(b)(6). *See, e.g., Edwards v. City of Goldsboro*, 178 F.3d 231, 243 (4th Cir. 1999); *Booker v. Peterson Cos.*, 412 F. App'x 615, 616 (4th Cir. 2011); *Economides v. Gay*, 155 F. Supp. 2d 485, 488 (D. Md. 2001). Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is "to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).

In determining whether dismissal is appropriate, this Court assumes as true all well-pleaded facts in the plaintiff's complaint but does not accept the plaintiff's legal conclusions. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 253 (4th Cir. 2009). A complaint must be dismissed if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Simmons v. United Mortg. & Loan Inv., LLC*, 634 F.3d 754, 768

9

(4th Cir. 2011); *Andrew v. Clark*, 561 F.3d 261, 266 (4th Cir. 2009). In making this assessment, a court must "draw on its judicial experience and common sense" to determine whether the pleader has stated a plausible claim for relief. *Iqbal*, 556 U.S. at 679.

## ANALYSIS

The Court addresses the remaining argument from Defendant's Motion for Summary Judgment (ECF No. 85) before turning to discuss Defendant's Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center, Inc. (ECF No. 86).

### I. Remaining Argument from Summary Judgment Motion (ECF No. 85)

As noted *supra*, only one argument from Defendant's Motion for Summary Judgment (ECF No. 85) remains a live issue following Plaintiff's stipulation of dismissal against Dr. Markmann and Metamorphosis and filing of the TAC: whether summary judgment is appropriate because the alleged negligence of the Northwest PAs was not the proximate cause of Patterson's claimed injuries. (ECF No. 85 at 12–14.)

In order to prevail in his medical malpractice action against Northwest, Maryland law requires Patterson to establish (1) the applicable standard of care; (2) that Defendant breached this standard; and (3) that his injuries were caused by Northwest's breach. *Weimer v. Hetrick*, 525 A.2d 643, 651 (Md. 1987). Maryland law further requires Patterson to prove both negligence and causation by expert testimony. *Simmons v. O'Malley*, 85 F. App'x 322, 325 (4th Cir. 2004) (citing *Meda v. Brown*, 569 A.2d 202, 207 (Md. 1990)).

Through Defendant's Motion for Summary Judgment (ECF No. 85), Northwest contends that the alleged negligence of the Northwest PAs was not the proximate cause of

10

Patterson's claimed injuries. (ECF No. 85-1 at 12–14.) Accordingly, the Court limits its discussion to the issue of proximate causation.

In a medical malpractice case, the plaintiff bears the burden of proving by the preponderance of the evidence that the defendant's breach proximately caused the injury for which damages are sought. *Reed v. Campagnolo*, 630 A.2d 1145, 1148 (Md. 1993). In demonstrating proximate causation, "the plaintiff must prove the defendant's breach of duty was more likely than not (i.e., probably) the cause of the injury." *Hurley v. United States*, 923 F.2d 1091, 1094 (4th Cir. 1991).

Courts have long recognized complicated and connected aspects of causation in medical malpractice cases. Indeed, a defendant's negligence need not even be the sole cause of an injury, *see Young v. United States*, 667 F. Supp. 2d 554, 561 (D. Md. 2009) (citing *Atl. Mut. Ins. Co. v. Kenney*, 591 A.2d 507, 512 (Md. 1991); *Stickley v. Chisholm*, 765 A.2d 662, 668 (Md. App. 2001)), and an injury may have more than one "proximate cause," *id.* (citing *Karns v. Liquid Carbonic Corp.*, 338 A.2d 251, 262 (Md. 1975)). Thus, the causation element requirement requires a plaintiff to establish not that the defendant's negligence was the sole cause of plaintiff's damages, but that there is a reasonable connection between defendant's negligence and plaintiff's damages. *Id.*

In support of its summary judgment motion, Northwest first emphasizes that *some* of Plaintiff's experts—namely, Dr. Frank Lau, M.D., ("Dr. Lau") (ECF No. 85-15) and Dr. James Apesos, M.D., ("Dr. Apesos") (ECF No. 85-16)—do not address whether the Northwest PAs caused Plaintiff's claimed injuries, but rather opine that Dr. Markmann caused Plaintiff's claimed injuries. (ECF Nos. 85-1 at 12–14; 94 at 4–5.) In so doing, Defendant overlooks the

11

expert reports of Craig Baumgartner, PA-C, ("Baumgartner") (ECF No. 88-17) and Dr. Robert Hymes, M.D., ("Dr. Hymes") (ECF Nos. 85-17; 88-18). In brief, the Court has reviewed the expert reports of Baumgartner (ECF No. 88-17) and Dr. Hymes (ECF Nos. 85-17; 88-18), and concludes that Patterson has presented sufficient proof of causation in fact to create a genuine issue of material fact as to whether there is a reasonable connection between Northwest's negligence and Patterson's damages. Simply stated, the opinions of Drs. Lau and Apesos do not foreclose Plaintiff's cause of action against Northwest, as negligence that constitutes a proximate cause of an injury need not be the sole cause, *Kenney*, 591 A.2d at 512, and there may be more than one proximate cause of an injury. *Karns*, 338 A.2d at 262.

Second, Northwest contends that because the Northwest PAs were not involved in Plaintiff's care after Patterson's discharge from Northwest on July 1, 2021, their care did not cause or contribute to any delay in Patterson's subsequent care. (ECF Nos. 85-1 at 14; 94 at 5–6.) Basically, Northwest is arguing that Dr. Markmann's failure to recommend that Plaintiff seek emergency treatment earlier post-discharge is a superseding cause.

Northwest is correct that a "superseding cause" breaks the chain of causation, "in which case the original tortfeasor's liability will terminate." *Sindler v. Litman*, 887 A.2d 97, 111 (Md. App. 2005). However, not all intervening forces are superseding causes under Maryland law. *Id.* at 111–12. As the court in *Sindler* explained:

> An intervening force is a superseding cause if the intervening force was not foreseeable at the time of the primary negligence. . . . It is a superceding cause . . . if it so entirely supercedes the operation of the defendant's negligence that it alone, without his negligence contributing thereto in the slightest degree, produces the injury. . . . But the connection is not actually broken, if the intervening event is one which might, in the natural and ordinary course of things, be anticipated as not entirely improbable, and the defendant's negligence is an essential link in the chain of causation.

*Id* (citation omitted). In this case, whether Patterson's permanent injuries resulted, not from the Northwest PAs provision of post-operative care, but from Dr. Markmann's failure to recommend that Plaintiff seek emergency treatment earlier post-discharge, is a jury question that requires expert testimony. Northwest asserts that the Northwest PAs did not provide any post-operative care to Patterson after he was discharged on July 1, 2021. Nevertheless, this is a factual question to be addressed by the jury at trial. Accordingly, Defendant's Motion for Summary Judgment (ECF No. 85) is DENIED.

## II. Defendant's Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center, Inc. (ECF No. 86)

Through its Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center (ECF No. 86), Northwest argues: (1) that Plaintiff had failed to specifically plead any claims of direct liability against Northwest, (ECF No. 86-1 at 7); and (2) that Plaintiff's claims for direct liability against Northwest must be dismissed for failure to comply with pre-filing requirements of Maryland's Health Care Malpractice Claims Act, MD. CODE. ANN., CTS. & JUD. PROC. §§ 3-2A-01–3-2A-10, (ECF No. 86-1 at 8). The Court addresses each argument below in turn.

### A. Whether Plaintiff Failed to Specifically Plead Any Claims of Direct Liability Against Northwest.

Northwest contends that Patterson is attempting to pursue a claim of direct corporate liability against Northwest without so pleading. (ECF Nos. 86-1 at 7; 95 at 1–4.) Chiefly, Northwest complains that Patterson's pleading does not allege that Northwest breached the standard of care with respect to its staffing, training, and/or supervision of the Northwest PAs, or with regard to its policies and procedures, but Patterson has nonetheless designated

13

experts to testify to such claims. (ECF Nos. 86-1 at 7; 95 at 3–4.)

Federal Rule of Civil Procedure 8(a)(2) requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief." This pleading standard is designed to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). A complaint does not need to contain "detailed factual allegations" to satisfy the Rule 8(a)(2) pleading standard, but it must have "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570. The determination of whether a complaint states a plausible claim for relief is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). A motion for judgment on the pleadings pursuant to Rule 12(c) "should not be granted unless it appears to a certainty that the non-moving party cannot prove any set of facts in support of its claim that would entitle it to relief." *Shooting Point, L.L.C. v. Cumming*, 238 F. Supp. 2d 729, 735 (E.D. Va. 2002), *aff'd*, 368 F.3d 379 (4th Cir. 2004).

In each of the four iterations of the complaint in this case, Plaintiff made clear that he is alleging that:

> [Northwest] is both individually liable and vicariously liable for its negligence and the negligent actions and inactions of its agents, servants, and/or employees involved in the care of Damien Patterson, at all relevant times, including the negligent actions and inactions of its agents P.A. Stromberg, P.A. Gibbons, P.A. Ponton, and its employees/agents that provided care to Damien Patterson.

(ECF Nos. 1 ¶ 10; 14 ¶ 10; 76 ¶ 10; 115 ¶ 10.) With respect to the operative TAC, (ECF No. 115), Plaintiff makes clear in Count I that it is pursuing a claim of direct liability in addition to

14

vicarious liability. (*Id.* ¶¶ 45–48.) In paragraphs 46 and 47, Plaintiff provides:

> 46. Northwest Hospital Center, directly and through actual agents, servants, and employees, including but not limited to P.A. Gibbons, P.A. Stromberg, and P.A. Ponton, owed a duty to Mr. Patterson to exercise the degree of skill and care that like health care providers would have exercised under the same or similar circumstances.
>
> 47. The Hospital Defendants directly and through their actual agents, servants and employees failed to act as reasonably competent health care providers would have acted under the same or similar circumstances, breached their duty, and violated the applicable standard of care, and were negligent in the following and other ways:
>
> > a. Failing to appropriately monitor Mr. Patterson's post-operative condition;
> >
> > b. Failing to appropriately evaluate and consider potential causes of Mr. Patterson's post-operative pain, numbness, and other complaints;
> >
> > c. Failing to perform a differential diagnosis;
> >
> > d. Failing to suspect or consider compartment syndrome;
> >
> > e. Failing to test for or rule out compartment syndrome;
> >
> > f. Failing to diagnose and treat Mr. Patterson's bilateral compartment syndrome at a time when the condition could be remedied without permanent injury;
> >
> > g. Negligently discharging Mr. Patterson; and
> >
> > h. Were otherwise negligent.

While Defendant insists that Plaintiff's allegations fail to satisfy the pleading standard set forth in Fed. R. Civ. P. 8(a) with respect to Plaintiff's direct liability claim, this Court can reasonably infer that Patterson was pursuing a direct liability and vicarious liability claim against Northwest in the operative complaint. Simply stated, the Court construes Plaintiff's factual allegations to encompass Plaintiff's theory that Northwest was negligent in its policies and procedures and/or its staffing, training, and/or supervision of the Northwest PAs.

Accordingly, Defendant's Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center (ECF No. 86) is DENIED on this basis.

### B. Whether Plaintiff's Claims for Direct Liability Must Be Dismissed for Failure to Comply with MHCMCA Pre-Filing Requirements.

Finally, Northwest argues that Plaintiff's claims for direct liability against Northwest must be dismissed for failure to comply with pre-filing requirements of Maryland's Health Care Malpractice Claims Act ("MHCMCA"), MD. CODE. ANN., CTS. & JUD. PROC. §§ 3-2A-01–3-2A-10. (ECF No. 86-1 at 8). Northwest first argues that Plaintiff's claims for direct liability against Northwest must be dismissed because the Statement of the Claim (ECF Nos. 86-4; 86-5) submitted to the Maryland Health Care Alternative Dispute Resolution Office ("MHCADRO") as a prerequisite to filing this suit pursuant to MHCMCA, MD. CODE. ANN., CTS. & JUD. PROC. §§ 3-2A-01–3-2A-10, did not assert any breaches of the standard of care by Northwest with regard to its general policies, procedures, staffing, and/or training. (ECF No. 86-1 at 8.) Northwest further argues that Plaintiff's claims for direct liability against Northwest must be dismissed because Patterson did not file a Certificate and Report of Qualified Expert attesting that Northwest departed from the standard of care in this regard, or that such a departure was the proximate cause of his alleged injury, as required as a prerequisite to filing this lawsuit pursuant to MHCMCA. (*Id.*) In response (ECF No. 89), Plaintiff aptly notes[4] that MHCADRO's pre-filing requirements do not apply in federal court.

---

[4] Patterson further contends that even if the Court were to find that MHCADRO applies in federal court, that his filings are sufficient (ECF No. 89 at 12–13), and even if they were not, that Plaintiff's claims need not be dismissed for either constructive compliance or a good cause extension. (*Id.* at 13–16.) Because the Court agrees with Plaintiff that the pre-suit requirements of the MHMCA do not apply, it need not address Plaintiff's alternative arguments.

16

(ECF No. 89 at 10–12.) The United States Court of Appeals for the Fourth Circuit in *Pledger v. Lynch*, 5 F.4th 511 (4th Cir. 2021) clearly held that West Virginia's medical malpractice pre-suit filing requirement does not apply in federal court because it conflicts with the Federal Rules of Civil Procedure. *Id.* at 519. This Court on several occasions has clearly recognized the binding authority of the Fourth Circuit's opinion in *Pledger*. *Charette v. Wexford Health Sources, Inc.*, No. CCB-19-33, 2022 U.S. Dist. LEXIS 173183 (D. Md. Sep. 23, 2022); *Rodriguez v. United States*, No. LKG-21-0411, 2022 U.S. Dist. LEXIS 141513 (D. Md. Aug. 8, 2022); *DeBlois v. Corizon Health, Inc.*, No. ELH-20-1816, 2021 U.S. Dist. LEXIS 140286 (D. Md. July 23, 2021); *Leupolu v. Okoluku*, No. SAG-21-1854, 2022 U.S. Dist. LEXIS 159037, at *5–6 (D. Md. Sep. 1, 2022); *Severe v. United States*, No. SAG-20-3404, 2021 U.S. Dist. LEXIS 190889, at *41–42 (D. Md. Oct. 1, 2021).

As Judge Blake explained in *Charette v. Wexford Health Sources, Inc.*, No. CCB-19-33, 2022 U.S. Dist. LEXIS 173183 (D. Md. Sept. 23, 2022), Maryland's Health Care Malpractice Claims Act requires plaintiffs to file a certificate of a qualified expert explaining how a defendant's departure from relevant "standards of care" proximately caused the alleged injury. MD. CODE ANN., CTS. & JUD. PROC. § 3-2A-04(b)(1)(i). Plaintiffs must also submit their claims to arbitration through the Maryland Health Care Alternative Dispute Resolution Office unless they properly waive arbitration. *Id.* § 3-2A-06B(a).

As the Fourth Circuit explained in *Pledger*, such pre-suit "state-law certification requirements . . . are inconsistent with the Federal Rules of Civil Procedure, and thus displaced by those rules in federal court." 5 F.4th at 514. Defendant's argument wholly overlooks *Pledger*, as well as several opinions of this Court applying *Pledger* to MHMCA and uniformly

17

holding that these pre-suit requirements are inapplicable in federal court. *Charette*, 2022 U.S. Dist. LEXIS 173183, at *16; *DeBlois*, 2021 U.S. Dist. LEXIS 140286, at *16, *22; *Rodriguez*, 2022 U.S. Dist. LEXIS 141513, at *13; *Leupolu*, 2022 U.S. Dist. LEXIS 159037, at *5–6; *Severe*, 2021 U.S. Dist. LEXIS 190889, at *41–42. Accordingly, Defendant's argument on this point is without merit, and the Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center (ECF No. 86) is DENIED on this basis.

## CONCLUSION

For the reasons stated above, Defendant's Motion for Summary Judgment (ECF No. 85); and Defendant's Motion for Judgment on the Pleadings and to Dismiss Plaintiff's Claims of Direct Liability Against Northwest Hospital Center (ECF No. 86) are both DENIED.

A separate Order follows.

Date: March 18, 2025                              /s/
                                                  Richard D. Bennett
                                                  United States Senior District Judge